IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **TOMMY JOE STUTZKA,**<br>**Conservator for Carol A. Gibilisco,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**JAMES WALTERS, d/b/a Prestige**<br>**Mortgage, and POPULAR FINANCIAL**<br>**SERVICES, L.L.C.,**<br><br>**Defendants.** | **CASE NO. 8:02CV72**<br><br>**MEMORANDUM AND ORDER**<br>**ON CROSS MOTIONS FOR**<br>**SUMMARY JUDGMENT** |

This matter is before the Court on cross-motions for summary judgment. The sole issue following the parties' appeal to the United States Court of Appeals for the Eighth Circuit is whether Defendant Popular Financial Services, LLC, ("Popular") violated the Truth in Lending Act (hereafter "TILA"), codified at 15 U.S.C. §§ 1601 *et seq.*, by failing to make statutorily required disclosures in the loan documents signed by Carol Gibilisco. Plaintiff Tommy Joe Stutzka is the conservator for Carol A. Gibilisco ("Carol" or "Gibilisco"), and he brought this action on her behalf.

Plaintiff has moved for summary judgment arguing that no material facts remain to be decided, and that summary judgment in his favor is appropriate because there is uncontroverted evidence that the variable character of the interest rate applied to the loan that Popular made to Carol Gibilisco was not disclosed in the loan documents or in the good faith estimates as is required by law. Popular contends that it is not liable to the Plaintiff because the closing agent furnished verbal explanations of the material disclosures required by TILA, including the variable interest rate on the loan closing, and

because copies of all the loan documents, including the Notice of the Right to Rescind, were provided to both Gibilisco and co-borrower Cheri Nord-McCarville.

## PROCEDURAL BACKGROUND

This case commenced with the filing of the Complaint on February 13, 2002. The matter was tried to the Court from April 13 through 16, 2004, and the Court issued its Findings of Fact and Conclusions of Law on May 21, 2004 (Filing No. 301), and an Amended Judgment on June 21, 2004 (Filing No. 311). This Court entered judgment in favor of the Plaintiff and against the Defendants James Walters, d/b/a Prestige Mortgage, and Popular Financial Services, L.L.C.; rescinded the Popular loan based on Gibilisco's lack of capacity; declared null and void the deed that transferred the Hickory Street property from Carol Gibilisco to both Gibilisco and Cheri Nord-McCarville; quieted the title to the Hickory Street property in Carol A. Gibilisco and confirmed it against the Defendants and Cheri Nord-McCarville; reformed the promissory note and deed of trust to remove Carol Gibilisco therefrom as a borrower; ordered Carol Gibilisco to remit to Popular the sum of $85,000, without interest; and ordered Walters to remit to Gibilisco the sum of $4,059 and to remit to Popular the sum of $850.

Stutzka appealed the Amended Judgment with respect to his claims against Popular, specifically arguing that Gibilisco should not have to repay the $85,000 to Popular, and arguing that his TILA claims should have survived summary judgment. The Eighth Circuit Court affirmed this Court's determination that Gibilisco was obliged under Nebraska law to repay the $85,000 to Popular following rescission of the loan. The Eighth Circuit reversed the court's grant of summary judgment in favor of Popular on the TILA claims, and those TILA claims are now before the Court.

2

## TILA Claims

The Eighth Circuit Court of Appeals identified two TILA claims presented to the district court: (1) that Popular failed to disclose material terms at the closing; and (2) that Popular failed to provide Gibilisco with notice that she had the right to cancel the loan. *Stutzka v. McCarville*, 420 F.3d 757, 760 (8th Cir. 2005). Stutzka sought damages and attorney fees for both alleged violations and recision based on the second. I need not address Plaintiff's entitlement to rescission under TILA, because this Court's decision to rescind the transactions based on Gibilisco's lack of capacity was affirmed. The Eighth Circuit Court held that the affidavits presented by the Plaintiff in opposition to Popular's motion for summary judgment, which were not considered by this Court, should have been considered, and had they been, the Plaintiff's evidence was sufficient to create a genuine issue of material fact as to whether the mandatory disclosures were made to Gibilisco as required by TILA. The Eighth Circuit Court stated:

> The testimony of the closing agent for the Popular mortgage established that all material terms were disclosed at the closing (including the right to cancel) and that Gibilisco signed documents attesting to that fact. Gibilisco's signature on the documents created a rebuttable presumption that the proper disclosures had been delivered to her. 15 U.S.C. § 1635(c). In an attempt to overcome that presumption, Stutzka submitted an affidavit signed by Gibilisco in which she stated that she "never received any papers, documents, or letters of any kind regarding the mortgage. . . . [and] an affidavit from Stutzka that was not considered due to an apparent problem with the district court's electronic case filing system. Stutzka's affidavit stated that he had done Gibilisco's record keeping since Sam's death, that he would have known if Gibilisco received loan papers, that he was present almost immediately when Gibilisco returned from the closing, and that he was unaware of the existence of any documents at that time. These assertions, apart from Gibilisco's affidavit, are sufficient to surmount the rebuttable presumption of delivery and create a fact issue for trial.

420 F.3d at 762. Accordingly, this Court must now consider Plaintiff's TILA claims.

The parties agree that there are no facts in dispute.  Neither party has offered new evidence in support of the motions.  Rather, the parties rely upon the Court's Findings of Fact and Conclusions of Law (Filing No. 301), the trial transcript (Filing Nos. 322-25), previously offered Stutzka and Carol Gibilisco affidavits dated January 29, 2004 (Filing Nos. 257), the deposition of closing agent Kelley Dalberg (Filing No. 255), and trial exhibits, including exhibits 9 and 10, in arguing their respective positions.  (Filing No. 356 and 360).  I agree with the parties that there are no genuine issues of material fact that prevent disposition of the remaining issues.  For the reasons that follow, I conclude that the Plaintiff is entitled to summary judgment as a matter of law on only a portion of his TILA claim.

### Law of the Case

> "The law of the case" doctrine generally requires that a decision on a former appeal be followed in any subsequent proceedings in that court or a lower court unless evidence subsequently introduced is substantially different or the decision is clearly erroneous and works manifest injustice.

*In re Progressive Farmers Ass'n,* 829 F.2d 651, 655 (8th Cir. 1987).  The doctrine "prevents repeated litigation of the same issue and promotes uniformity of decision."  *Liddell v. State of Missouri,* 731 F.2d 1294, 1304-05 (8th Cir. 1984).  Courts have been directed to reconsider a previously decided factual issue only if the facts of the case have changed substantially since the appeal.  *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1,* 971 F.2d 160, 165 (8th Cir. 1992), citing *Continental Bank & Trust Co. v. American Bonding Co.,* 630 F.2d 606, 608 (8th Cir. 1980).  The Eighth Circuit Court of Appeals has held that the doctrine "extends not only to actual holdings but also to all issues implicitly settled in prior rulings*." Jones v. United States,* 255 F.3d 507, 510 (8th Cir. 2001).

**Factual Background**

The facts of this case have not changed since the appeal. Relevant paragraphs from the Findings of Fact and Conclusion of Law are restated here for convenience. Additional, undisputed facts that are pertinent to the resolution of the TILA claims follow.

34. The loan application, [prepared by Walters] submitted between April 13 and 16, 2001, on behalf of Nord-McCarville and Carol, contained misstatements of fact, including but not limited to the following: 1) Nord-McCarville was unmarried; 2) Carol had worked for Eagle Spirit Embroidery for five years and earned $300 monthly; 3) Nord-McCarville had a monthly income from the embroidery business o9f $4,166; 4) Carol received $1,257 per month in social security disability payments; and 5) Carol was male. (Exs. 40, 96, 201.) . . . .

38. Although the loan was initially processed as a fixed-rate loan, it was closed with a variable rate, with a maximum of 15.875 percent interest, because the borrowers did not qualify for a fixed rate. . . .

39. Walters did not disclose the change from a fixed rate loan to a variable rate loan in the April 13, 2001, good faith estimate (Ex. 10) or in the truth-in-lending statement (Ex 9) or otherwise.

40. Other disclosures were sent by Walters, but only to the McCarvilles[1] and not to Carol. . . . .

45. On May 11, 2001, on the return trip from O'Neill to Omaha, the McCarvilles and Carol met Walters and proceeded to the LTS Title office to close on the loan. Present were: Carol, McCarville, Nord-McCarville, Walters, and Kelley Dalberg, an LTS escrow officer. (Exs. 35, 65).

46. The closing lasted thirty to forty-five minutes, during which Dalberg explained the various loan documents and the terms contained therein as she would do at any

---

[1] The other McCarville is James P. McCarville, husband to Cheri Nord-McCarville. James is identified and his role in this matter is more fully described in the Findings of Fact and Conclusions of Law (Filing No. 301). Default judgment was entered against the McCarvilles. (Filing Nos. 218 and 219).

closing. No one asked any questions about the documents or procedure. Dalberg knew that Carol was blind, but she was unaware that Carol was developmentally disabled.

47. As closing agent, LTS prepared a deed conveying the property in question from Carol individually, to Carol and Nord-McCarville, jointly. Carol signed the deed at the closing. . . .

49. The principal amount borrowed from Popular was $85,000, to be repaid over a five-year term. Of that amount, $79,379.74 went to pay outstanding loans from U.S. Bank. (Ex. 2) The interest rate was variable, but began at 9.875 per cent. At that rate of interest, the monthly principal and interest payments were $738.10 (Ex. 6). When combined with hazard insurance and real estate tax payments, the total monthly payment became $877.10 (Ex. 36.) The variable rate could change as early as June 2003 to a rate not greater than 12.875 %, and the rate could then change each six months thereafter not to exceed a rate of 15.875 %. (Ex. 6. ) If the interest rate were to become 15.875%, monthly loan payments would rise to approximately $1135. The loan included a prepayment penalty. . . .

51. Carol asked no questions about the Popular documents, which were not printed in Braille. . . .

53. In error, Nord-McCarville signed under the notation "I WISH TO CANCEL" on the form entitled 'NOTICE OF RIGHT TO CANCEL." . . .

55. After the closing, the McCarvilles drove Carol home. Carol was not given her copies of the closing documents (Filing No. 36). McCarville kept them. Carol never met with the McCarvilles again.

## Additional Undisputed Facts

The undisputed evidence from Walters and from Dalberg is that, at the closing, the LTS closing agent Kelley Dalberg verbally explained the loan documentation to Gibilisco and Nord-McCarville. She explained all the key features of each document, including but not limited to the adjustable rate note, to the borrowers in her usual manner. (Ex. 6) She

reviewed the key features of the Federal Truth-in-Lending Disclosure Statement executed on May 11, 2001 (Ex. 9), the Good Faith Estimate executed on May 11, 2001 (Ex. 10), the pamphlet explaining the variable interest rate mortgage program (Ex. 11), and the Notice of the Right to Rescind.  (Dalberg Dep. Exs. 101-103).  The documents were presented to Carol Gibilisco on May 11, 2005, and she executed or initialed them.  (Tr. 404, 419-422, 468-70, 472, 559-560, 573, 618; Dalberg Dep. at 38-78, 87-91, 98).

The pamphlet (Ex. 11) explains generally the characteristics of an adjustable rate mortgage, but it does not include loan-specific representations such as are generally included in the Truth in Lending Statement.  (Tr. 559:5 - 560:6; 618:7-10).  In addition to the pamphlet, Dalberg presented and explained the features of the adjustable rate note. (Tr. 419-422:11; Dalberg Dep. 37-39).  Considering these verbal explanations, the undisputed facts establish that the variable nature of the interest rate on the note was explained to the borrowers.  However, it is also undisputed that the variable interest rate was not disclosed in an amended Federal Truth-in-Lending Disclosure Statement.  The form that was presented to and executed by Gibilisco on the day of the closing does not disclose that a variable interest rate will apply to the note.  (Tr. 472:17-25; 573:20-35; Dalberg Dep. 37-39.)

## ANALYSIS

The Plaintiff contends that summary judgment is appropriate on the TILA claims for two reasons: first, copies of the loan documents that contained the material disclosures were not provided to Gibilisco; and second, the variable character of the interest rate on the loan was not disclosed in the manner required by TILA.  Popular contends that it is entitled to summary judgment because unexecuted copies of all the documents were

provided to Gibilisco by the closing agent during the closing.  Popular argues that even if Gibilisco's copies were retained by James McCarville following the closing, McCarville's possession of Gibilisco's copies was an intervening act that does not negate the fulfillment of Popular's duty to provide Gibilisco with the material disclosures in a form that she would be able to take with her.

I find that all statutorily required material disclosures[2] were made to Gibilisco verbally during the closing.  With one exception regarding the existence of the variable interest rate on the note, which is discussed below, the verbal disclosures were properly recorded in the loan documentation, and I find that copies of the loan documents were provided to Gibilisco during the closing.[3]  Consistent with the law of the case, I find that copies of the unexecuted loan documents, including the Notice of the Right to Rescind, were provided to Gibilisco during the closing, and, therefore, Popular complied with TILA by delivering the material disclosures to Gibilisco "in a manner that the consumer may keep." *See* 12 C.F.R. §226.17.  The Court previously found that McCarville retained Gibilisco's copies of the loan documents after the closing.  I find that copies of the closing documents were prepared for Gibilisco, but that Gibilisco did not leave the closing with the

---

[2] "Material disclosures" include the annual percentage rate, the method of determining finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and more. 15 U.S.C. § 1602(u); .

[3] While Dalberg cannot specifically recall providing copies of the documents to Gibilisco and Nord-McCarville in this case, she said that her regular procedure is to give the borrowers unexecuted copies of the documents at the beginning of each closing, and there is no reason for her to believe that she did not do so in this case. (Dalberg Dep. 122-23.)

copies that had been prepared for her for the reason that McCarville retained custody of Gibilisco's copies. This explains why Stutzka, who would have been in a position to see financial documents belonging to Gibilisco, never saw any of the loan or closing documentation in Gibilisco's possession or at her residence.

This finding is consistent with Gibilisco's statement that she did not receive copies. Gibilisco's statement, given all the circumstances surrounding the closing, does not create a genuine issue of material fact that would preclude summary judgment in favor of Popular on this part of the TILA claim. I agree with Popular that it was McCarville's intervening action – retaining custody of Gibilisco's copies of the loan documents – that prevented Gibilisco from possessing the disclosure statements, and not the failure of Popular to provide them to her.[4] Thus, I conclude that, with one exception, Popular made the material disclosures in the manner required by TILA. *See* 12 C.F.R. § 226.6; § 226.17.

I find, however, that Popular technically violated TILA by failing properly to disclose information about the variable interest rate. *See* 12 C.F.R. 226.17-.19. When Walters changed the terms of the loan from a fixed annual rate to the variable annual rate, the disclosures of the interest rate under the Federal Truth in Lending Disclosure Statement that was presented at the closing to Nord-McCarville and Gibilisco became incorrect. *See* 12 C.F.R. § 226.19. I refer to this as a technical violation in part because Popular, through the note itself and by reference to the pamphlet on variable interest rate mortgage loans

---

[4] I reject Popular's argument that it satisfied its TILA requirements by providing copies of all the loan documentation to Gibilisco's co-borrower, Cheri Nord-McCarville, as permitted by 15 U.S.C. § 1631(a). That argument fails because both Gibilisco and Nord-McCarville had a right to rescind this residential mortgage, bringing the transaction under 15 U.S.C. §1635. They were jointly liable; they both had the right to rescind; and they were each entitled to the disclosures. 12 C.F.R. §§ 226.15 and .31(e).

9

(Exs. 6 and 11), disclosed that a variable interest rate applied to the loan. The application of a variable interest rate was explained to the co-borrowers by Dalberg.

Nevertheless, the Federal Truth-in-Lending Disclosure Statement, which is designed to disclose the cost of the credit as a yearly rate, and the dollar amount that the credit will cost the borrower over the length of the loan, among other things, did not disclose the variable character of the interest rate or the effects of that on the loan and loan payments to Gibilisco or Nord-McCarville. (Tr. 313, 410-11, 468-472; Ex. 9). The form does not reveal, for example, that the rate can change over time; does not identify how the rate will be determined; and does not address the frequency of interest rate and payment changes. These disclosures could have been made and copies placed in the mail not later than three days after the consumer loan application was received from the borrower -- in this case on May 11, 2001, when Gibilisco signed the loan application. Because Popular failed to make the necessary disclosures about the existence of a variable interest rate applicable in a transaction secured by the consumer's principal dwelling, I conclude that Stutzka is entitled to summary judgment on this sole TILA claim.[5]

The Eighth Circuit Court has long recognized the importance of the annual percentage rate disclosure under TILA. The Court stated:

> TILA is intended to promote the informed use of consumer credit by assuring meaningful disclosure of credit terms. See 15 U.S.C. § 1601(a); *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 793-94, 63 L.Ed.2d

---

[5] I also find that while the Good Faith Estimate (Ex. 10) did not state that Popular would take a security interest in the real property, but the security interest in the Hickory Street property was conspicuously identified in the Truth in Lending Statement dated May 11, 2001. (Ex. 9). Thus, Popular's disclosure requirement in that regard was satisfied. I also conclude that Exhibit 11, the pamphlet that explains the features of an adjustable rate mortgage, satisfies TILA's requirements under § 226.19(b)(1).

10

22 (1980). The "annual percentage rate" is one of the most important required disclosures because it requires lenders to express uniformly the cost of a credit transaction (interest) as an annual rate. Reflecting the importance of this disclosure, TILA provides that the annual percentage rate "shall be disclosed more conspicuously than other terms,"15 U.S.C. § 1632(a).

*Sentinel Federal Sav. and Loan Ass'n of Kansas City, Mo. v. Office of Thrift Supervision* 946 F.2d 85, 87 - 88 (8th Cir. 1991). The Code of Federal Regulation provides that any change from a fixed to a variable interest rate before consummation of the loan affects the annual percentage rate, and the fact of the variable rate and the potential cost of the loan and must be disclosed. *See* 12 C.F.R. §§ 226.17-.20.

## DAMAGES

Plaintiff has requested a hearing on actual damages, but I conclude that a hearing is unnecessary. The Eighth Circuit Court has required TILA plaintiffs to demonstrate causation before recovering actual damages. The Court has stated:

> [C]ourts have required the plaintiff to show the TILA violation was the proximate cause of any actual damages. In order to show causation, a plaintiff must show that: (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price.

*Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000), citations omitted.

Because Plaintiff cannot present any facts to show that Gibilisco understood the interest rate being disclosed or would have changed her behavior as a result of a change in the

11

interest rate, I conclude as a matter of law that the Plaintiff cannot show the requisite causation element, and actual damages cannot be awarded in this case.[6]

Even when a borrower cannot establish actual damages, lenders may be liable for technical or minor violations of TILA because, for instance, a proven violation of disclosure requirements is presumed to frustrate the Act's purpose of permitting consumers to compare various available credit terms. See 15 U.S.C. § 1601(a); *Dryden v. Lou Budke's Arrow Finance Co.,* 661 F.2d 1186, 1191 (8th Cir. 1981). For this reason, I conclude that Plaintiff is entitled to a statutory award. Popular's failure to provide Gibilisco with a Federal Truth in Lending Statement that reflected the variable interest rate discussed at the closing is a violation of federal law. The direct effect of the violation on Gibilisco is negligible however, because the variable interest rate was accurately described to Gibilisco by Dalberg during the closing, and Gibilisco did not have access to the written disclosures thereafter. However, in the reasonable exercise of my discretion, within the statutory award range of $200 to $2,000, I award plaintiff $200 for the TILA violation. *See* 15 U.S.C. § 1640(a)(2)(A)(iii).

---

[6] I am mindful of a hypothetical posed by then Chief Judge Posner of the Seventh Circuit Court several years ago.
> Suppose [plaintiff] were blind. Or retarded. Would anyone argue that shoving aTruth in Lending Act disclosure form in front of her face would be a defense to fraud? The allegation is that she belongs to a class of borrowers who are not competent interpreters of such forms and that the defendant knows this and sought to take advantage of it. Taking advantage of the vulnerable is a leitmotif of fraud.

*Emery v. American General Finance, Inc.,* 71 F.3d 1343, 1347 (7th Cir. 1995)(Posner, C.J.) I note that in this case, there is no evidence that Popular and Dalberg understood that Gibilisco was incompetent to understand the information provided or that they had any part in an attempt to defraud her. Unfortunately, even accurate TILA disclosures in this case would not have given Gibilisco protection against the McCarvilles.

**CONCLUSION**

Because Popular failed to provide to Gibilisco and Nord-McCarville a Federal Truth in Lending Statement that reflected the variable interest rate of the note, I conclude that the Plaintiff is entitled to summary judgment only as to that part of his TILA claim. I conclude that Plaintiff is unable to demonstrate an entitlement to actual damages as a matter of law, and therefore, I award a statutory fine in the amount of $200 for the TILA violation.

Whether Stutzka is entitled to a full or partial award of attorney's fees under TILA shall be considered separately. Counsel are advised to refer to Fed. R. Civ. P. 54(d) and NECivR 54.1, 54.3 and 54.4 for filing deadlines and additional guidance on the preparation of the taxation of costs and the application for fees and expenses.

IT IS ORDERED:

1. The Plaintiff's Motion for Summary Judgment (Filing No. 355) is granted in part and denied in part as follows: the motion is granted as to Plaintiff's claim that the Defendant violated TILA in failing to disclose in writing the variable interest rate applicable to the note in an amended Federal Truth-in-Lending Disclosure Statement; but the motion is denied in all other respects;

2. The Defendant's Motion for Summary Judgment (Filing No. 358) is granted in part and denied in part as follows: the motion is granted on Defendant's claim that it satisfied TILA disclosure requirements by providing to Gibilisco the material disclosures in a manner that she could keep, except as to the material disclosure regarding the variable interest rate on the loan as to which the motion is denied;

3. The Clerk is directed to terminate Filing No. 364; and

4. A separate judgment in favor of the Plaintiff will be entered.

Dated this 28th day of March 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge